**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 4:18-CR-279 AGF NAB |
| ) | |
| BRIJ VAID and DONNA WALDO, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are defendants Dr. Brij Vaid's and Donna Waldo's Joint Motion to Compel the Discovery Responses the Court Instructed the Government to Provide at the December 4, 2018 Hearing [Doc. 103]. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

**Background**

On April 3, 2018, a grand jury sitting in this district returned a seven-count Indictment charging Defendant Brij Vaid and Donna Waldo with one count of conspiracy to present false claims to Medicare and Medicaid in violation of 18 U.S.C. § 287; in counts two through seven, Defendant Vaid was charged with making and presenting false claims to the United States in violation of 18 U.S.C. § 287. [Doc. 2] A ten-count Superseding Indictment (SI) returned on August 9, 2018, re-alleges the conspiracy charges in count one and charges both Vaid and Waldo in counts two through ten with making and presenting false claims to the United States in violation of 18 U.S.C. § 287 [Doc. 40]. The original indictment remains pending, even after the filing of a superseding indictment, unless and until the original indictment is formally dismissed. *United*

*States v. Yielding*, 657 F.3d 688, 703 (8th Cir. 2011) (citing *United States v. Walker*, 363 F.3d 711, 715 (8th Cir. 2004)).

On April 25, 2018, Defendants filed a Joint Request for Discovery Propounded to the Government [Doc. 30] and the United States filed a Response [Doc. 32].  In its response, the government stated that it had provided Defendants with a lengthy discovery letter and attachments.  Defendants, not satisfied with the government's response, filed a Motion to Compel Responses to Their Discovery Requests [Doc. 66].  In the motion, Defendants asked the undersigned to require the government to state whether specific material exists, and if so, to state whether the government is willing to produce it and if the government is not willing to produce it to state why the government is not willing to do so.  The government filed its opposition to the motion to compel [Doc. #76] and a response to the motion to compel [Doc. 77].

The undersigned held an evidentiary hearing on December 4, 2018 and heard argument regarding the motion to compel.  At that hearing, the undersigned instructed the defendants to narrow their discovery requests and stated that the government should provide specific responses to the defendants' specific requests.  The Court deferred ruling on the motion to compel at that time.

On December 13, 2018, defendants submitted discovery requests to the government [Doc. 100], and the government responded to the defendants' submission on December 21, 2018 [Doc. 102]. The abbreviated submission contained 35 requests for information, documents and statements, described as "Favorable Evidence, Brady Material, and Impeaching Information" in their original joint request for discovery.  In its response, the government filed responses and objections to defendants' requests.  Defendants then filed the motion to compel that is presently

before the court. [Doc. 103.] On February 12, 2019, the undersigned heard argument on the joint motion to compel.

**Applicable Legal Principles and Findings**

Many of the requests in the Defendants' Request for Discovery and Motion to Compel overlap and rely on more than one legal principle. As a result, an overview of the various legal foundations that impact the Government's obligations regarding each of the Defendants' requests will be addressed, followed by recommended findings for each type of evidence.

Since the early 20th-century, the Supreme Court has recognized that the conduct of prosecutors can have a direct impact on whether a defendant receives a fair trial, and that a prosecutor's failure to disclose evidence that is favorable to a defendant may result in a violation of a defendant's constitutional rights. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995); *see e.g., Mooney v. Holohan*, 294 U.S. 103, 112 (1935), *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942.). Perhaps the most prominent decision regarding a prosecutor's affirmative duty to disclose favorable evidence to defendants is *Brady v. Maryland*, 373 U.S. 83 (1963). Three important cases that were decided after *Brady*, further define the prosecutor's obligation to disclose favorable evidence. *See United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Bagley*, 473 U.S. 671 (1985); and *Kyles v. Whitley*, supra. Due to the significant impact such disclosures have on ensuring that defendants receive fair trials, each of those cases will be examined below.

### *Brady* and its progeny

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In *Brady* , the defendants Brady and an accomplice, Boblit,

3

were charged with Murder in the First Degree and tried separately. *Id*. at 84. Brady's trial was first, and he was sentenced to death. *Id*. During the trial, Brady admitted that he participated in the crime, but claimed that Boblit actually killed the victim. *Id.* During closing argument, Brady's counsel conceded that Brady was guilty of first degree murder and pleaded for the jury to return a verdict "without capital punishment." *Id*. After trial, Brady's counsel learned that although the prosecutor granted his request to examine Boblit's extrajudicial statements, the prosecutor withheld one statement in which Boblit admitted the homicide. *Id.* The Supreme Court emphasized the principle established by *Mooney* that society should not be punished for the misdeeds of a prosecutor, but rather that trials that are unfair to defendants should be prevented. *Brady*, 373 U.S. at 87.

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when an accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.'

*Id.* Therefore, Brady established the foundation for the government's obligation to provide exculpatory evidence to a criminal defendant.

In *United States v. Agurs*, 427 U.S. 97, 103-7 (1976), the Supreme Court identified three situations in which a *Brady* claim might arise, including: (1) where the prosecution's case includes perjured testimony and the prosecution knew, or should have known, of the perjury, (2) where there is a pretrial request for specific evidence (like in *Brady*—defense counsel's request for the accomplices' statements), and (3) where only a general request for *Brady* material is made. In addition, the Court considered "whether the prosecutor has any constitutional duty to volunteer

4

exculpatory matter to the defense, and if so, what standard of materiality gives rise to that duty."

*Id.*  The Court reasoned that:

> Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

*Id.* at 106.  The Court held that whether the focus is on the "desirability of a precise definition of the prosecutor's duty or on the potential harm to the defendant, [there] is no significant difference between cases in which there has been merely a request for exculpatory matter and cases ... in which there has been no request at all." *Id.* at 107.  The Court announced that a prosecutor commits constitutional error "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id*. at 108.  The omission must be evaluated in context of the entire record. *Id.* at 112.

> Because [the Court is] dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.  But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.

*Id*. at 108.

In *United States v. Bagley*, 473 U.S. 671 (1985), the issue addressed by the Court was the standard of materiality to be applied in determining whether a conviction should be reversed because the prosecutor failed to disclose requested evidence that could have been used to impeach government witnesses.  *Bagley* found that in cases where a prosecutor fails to disclose evidence

5

favorable to an accused in a "no request," a "general request," and "specific request" case, the "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

The *Bagley* decision confirmed that "[t]he *Brady* rule is based on the requirement of due process." *Id.* at 675.  The Court reiterated their conclusion in *Agurs* that "the prosecutor is not required to deliver his entire file to defense counsel,[] but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.*  In a footnote, the Court added that "a rule that the prosecutor commits error by *any failure to disclose evidence favorable to the accused, no matter how insignificant*, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments." *Id.* at n. 7 (emphasis added).

*Kyles v. Whitley*, 514 U.S. 419 (1995) was a capital case wherein after defense counsel made requests for exculpatory or impeachment evidence, the government failed to disclose six contemporaneous eyewitness statements taken by police, recordings and inconsistent statements involving a police informant, evidence indicating the informant's participation in other crimes, and other evidence gathered that would be favorable to defendant.  The Court concluded that there was a lack of confidence in the guilty verdict, because the suppressed evidence:  (1) could have led the jury to find inconsistencies in eyewitness descriptions of the killer; (2) showed that two of the four eyewitnesses that testified were unreliable; (3) revealed that prior statements of one of the lay witnesses were inconsistent and other impeaching information regarding the witness; (4) revealed information regarding the absence of defendant's vehicle in the parking lot where the murder occurred on the night of the murder; and (5) that the principal police witness was

6

"insufficiently informed or candid." *Id.* at 429-30, 454. The Court held that the state's obligation under *Brady* to disclose evidence favorable to the defense, "turns on the cumulative effect of all such evidence suppressed by the government … and the prosecutor remains responsible for gauging that effect regardless of any failure by the police to bring favorable evidence to the prosecutor's attention. *Id.* at 421. The prosecutor's responsibility and discretion with regard to favorable evidence was described in detail:

> While the definition of *Bagley* materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden. On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

*Id.* at 437-438. The Court then echoed its sentiment from *Agurs* by saying "[t]his means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be." *Id.* at 439 (citation omitted).

**Eastern District of Missouri Cases—*Peer, Palmer* and *Fonn***

The Defendants heavily rely upon three decisions from this District where motions to compel the government to make individual responses to discovery requests for favorable evidence

7

were granted[1]. *See United States v. Peer and Aharoni*, 4:10CR255CDP (Doc. 293); *United States v. Palmer, et al.*, 4:13CR338RWS (Doc. 57); *United States v. Sonjay Fonn, et al.*1:14CR089SNLJ (Doc. 59). *Peer* and *Palmer* were decided by the same Magistrate Judge.

*United States v. Peer and Aharoni*, 4:10CR255CDP, involved multiple alleged felony violations of federal fraud and immigration statutes. In *Peer*, the Magistrate Judge entered a total of nine Memoranda (Docs. 290-298) related to pretrial motions. Said Memoranda included the denial of a request for immediate disclosure of impeachment evidence (Doc. 293), denial of a request for disclosure of grand jury transcripts and materials related to the proceedings (Doc. 294), denial of a request for information and emails related to a confidential informant (Doc. 295), and the granting, in part, of a request for the production of specific *Brady* material (Doc. 298). Significantly, the nine Memoranda were entered on the same day (January 31, 2013) and also included a Report and Recommendation for the Indictment to be dismissed.  (Peer, *supra*, Doc. 296.) The Magistrate Judge made that recommendation:

> [b]ecause the defendants have made a plausible showing that the deported witnesses had testimony and information both material and favorable to their defense; that the testimony is not cumulative to other evidence or testimony available to the defendants; and that the government did not make a "good faith" effort to determine whether the witnesses possessed evidence favorable and material to the defendants before deporting the witnesses.

*Id.* at 31. The record of the *Peer* case reflects that the Government ultimately did not make individual responses to each of the discovery requests, because the case was dismissed on the Government's motion. (*Peer*, 4:10CR255CDP, Doc. 306.)  Although the Recommendation for

---

[1] 3 One of the attorneys of record for Defendants Brij Vaid and Donna Waldo was involved in the *Peer*, *Palmer* and *Fonn* cases, as was the same U.S. Attorney's Office, although different counsel.
c. 57).

8

dismissal of the Indictment was made in a separate Memorandum, the conclusion that there was a plausible showing that the Government had taken some action to make favorable material and evidence inaccessible to the defendants certainly colors the simultaneous decision directing the Government to make "specific responses to each of the [defendants'] discovery requests." (Doc. 293 at 11.)  In the regulation of discovery, "[i]f a party fails to comply with [Rule 16], the court may enter any order that is just under the circumstances." *See* Fed.R.Crim.P. 16(d)(2).  While this part of the rule was not cited in the Recommendation for individual responses to discovery requests, its application would be reasonable given the totality of the circumstances in *Peer*.

The second case from this District where an order was entered for the Government to provide specific responses to discovery requests is *United States v. Palmer*, *et al.*, 4:13CR338RWS.  *Palmer* involved two defendants who were charged with multiple felony counts of mail and wire fraud. Both defendants were convicted and sentenced to terms of imprisonment. As to the Motion to Compel, the Government's responsibility to provide specific responses to discovery requests in Palmer, the Magistrate Judge stated:

> The government is simply being required to provide specific responses to each of defendant's specific discovery requests. If the government believes that a specific request seeks material and/or information that does not exist, it may make such a response to that specific request.  If the government believes that a specific request seeks material and/or information to which the defendant is not legally entitled, the government may respond to that request by indicating such belief with the reasons therefor.  Providing legally sufficient reasons for declining to disclose certain requested material and/or indicating a good faith belief that such material does not exist does not disclose any strategy whatsoever nor render the government vulnerable to sanctions.

*Palmer*, (Doc. 57 at 4-5).  See also *Peer*, (Doc. 293 at 10). The reason for directing the Government to make specific responses to each individual request was as follows:

9

> . . .the lack of specific responses to specific requests can have the effect of representing to the defense that the requested information does not exist. In reliance upon such representation, the defendant may abandon lines of investigation, defenses or trial strategies that he might otherwise have pursued. In addition,. . .if the government is taking the position that the requested information is not *Brady* material or that the defendant is not entitled to the material for some other reason, the defendant needs to be made aware of that position so that he may make an informed decision whether to pursue production of the information and, if so, what arguments to present in support.

*Palmer*, Doc. 57 at 3-4. See also *Peer*, Doc. 293 at 8-9.  This was an exercise of his discretion.

The third decision from this District to compel the government to make individual responses to discovery requests for favorable evidence is *United States v. Sonjay Fonn, et al.*1:14CR089SNLJ.  In *Fonn*, the defendants were charged in a conspiracy to violate the Anti-Kickback Statute as well as three violations of the Statute.  Defendants were alleged to have received kickbacks from medical device manufacturers in exchange for ordering the devices.

The Magistrate Judge submitted an order recommending that defendants' motion to compel be denied.   (*Fonn*, Doc. 51.)  In her opinion, she recognized the *Peer* and *Palmer* decisions:

> The undersigned agrees that the Reports and Recommendations from *Peer* and *Palmer* that are relied upon by the Defendants do represent a new precedent. Those decisions demand a discovery practice (requiring the Government to make individual responses to specific discovery requests) for which the Defendants could not provide additional authority, nor has the undersigned found a similar procedure supported by any Eighth Circuit or Supreme Court decision. The Supreme Court determined that prosecutors play a critical role in ensuring that all defendants receive a fair trial. In defining what it means to receive a fair trial, the Court concluded that a fair trial is one in which the prosecutor discloses *materially* favorable evidence to the defendant.

10

*Id.* at 32-33.  The Magistrate Judge concluded that the prosecutor has the duty to identify and disclose evidence that is materially favorable to defendants before trial.  She concluded that in light of the materiality requirement established in *Agurs* and *Bagley*, the Government is not required to "provide all information which does not support its case."  She, therefore recommended the motion to compel be denied.  (Doc. 51 at 35.)

The defendants objected to the Magistrate Judge's recommendation and the District Judge sustained the objection, stating:

> At issue here is whether or not the government should be required to provide specific responses to the defendants' specific written discovery requests (see Doc. # 36). The defendants state that their discovery requests do not seek the production of documents, but are intended to elicit information from the government about the existence of documents containing information that the defendants believe is material to the case and that may be helpful to their defense. Although the government opposed the motion to compel, it has either produced or agreed to produce all documents and information required by Fed. R. Crim. P. 16, all favorable evidence and impeachment information required by *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), and all Jencks Act material.
>
> In two earlier cases involving the same issue, a magistrate judge of this Court granted the defendants' motions to compel specific responses to their discovery requests. *United States v. Robert M. Palmer*, et al., Case No. 4:13CR338 (RWS); *United States v. David Peer*, et al., Case No. S1-4:13CR255 (CDP). The magistrate judge reasoned that "[t]he lack of specific responses to specific requests can have the effect of representing to the defense that the requested information does not exist." *Peer* at p.8. The Court finds the rationale in *Palmer* and *Peer* to be persuasive.

*Fonn*, (Doc. 59 at 2.)  The district judge in *Fonn* acknowledged that the "Court is not convinced that the government has a constitutional duty to respond to the specific requests."  *Id.* at 3.  Relying on *Peer*, *Palmer* and *Fonn*, at the December 4, 2018 hearing in the instant case, the undersigned

directed the Government to provide specific responses to Defendants' specific discovery requests. The defendants submitted 35 requests and the government responded. In response to the Defendants' requests, the government agreed to produce statements for any witnesses the government ultimately calls at trial; the government also agreed to produce all materials required under *Jenks, Brady* and *Giglio*. The government, however, objected to some of the requests. In directing the government to respond to specific requests, the undersigned is mindful of the procedure set forth in *Palmer*. "If the government believes that a specific request seeks material and/or information that does not exist, it may make such a response to that specific request. If the government believes that a specific request seeks material and/or information to which the defendant is not legally entitled, the government may respond to that request by indicating such belief with the reasons therefor." *Palmer*, (Doc. 57 at 4-5).

Based on the foregoing, the undersigned makes the following recommendations regarding Defendants' requests:

**Defendants' Discovery Requests**

Several of Defendants' requests are for witness statements regarding potentially exculpatory or favorable information.

> (a) All Information and documents suggesting that any prospective government witness ever made a false, inaccurate, contradictory or inconsistent statement with regard to the Investigation or the facts underlying the Indictment, including but not limited to any information that any witness or "victim" has memory issues.
>
> (b) All Information and Documents relating to potential prosecution of any prospective government witness or entity.
>
> (c) Each instance where any witness told the government that a patient was told their prescription would not be replaced based, in whole or in part, on the policy alleged in Paragraph 27g of the original Indictment.
>
> (l) All Information and Documents discussing, relating to, or referencing in any way that billing errors related to this case were or might have been caused by anyone

other than Dr. Vaid or Ms. Waldo.

(o) Statements and/or written reports by any doctor who reviewed any patient files of Dr. Vaid or Donna Waldo, including statements that suggest the patient was treated properly.

(p) Any and all evidence that any person who is a government witness or prospective government witness in this case is or was suffering from any physical or mental disability or emotional disturbance, drug addiction or alcohol addiction at any time during the period of the indictment to the present.

(q) Any statement from any individual who said anything which suggested in any way that Dr. Vaid did not give instructions on how to bill any office visits.

(r) Any statement from any individual who said anything which suggested in any way that Donna Waldo did not give instructions on how to bill any office visits.

(s) Any statement from any individual who said anything which suggested in any way that Dr. Vaid was not trained on how to bill office visits.

(t) Any statement from any individual who said anything which suggested in any way that Donna Waldo was not trained on how to bill office visits.

(u) Any statement from any individual who said anything which suggested in any way that the billing software utilized at Dr. Vaid's offices had flaws or difficulties in capturing the correct billing codes.

(ee) Any information that anyone other than Dr. Vaid or Ms. Waldo accepted responsibility for any errors in billings related to this case.

The government responded to these requests stating that it has not determined what witnesses will be testifying at trial, and when witnesses are identified, the government will produce materials required under *Brady* and *Giglio*.  As for request (c), the government states that prescription records have been produced.  The government's responses are in compliance with the December 4, 2018 directive.  The motion to compel regarding requests (a), (b), (c), (l), (o), (p), (q), (r), (s), (t), (u) and (ee) should be denied.

Defendants also submitted requests for information regarding the Defendants' knowledge about billing and prescription procedures.

(d) All Information and Documents discussing, relating to, or referencing in any

13

way that Dr. Vaid might not have had knowledge as to how his bills were coded, including the identification of any witness who stated or suggested such.

(e) All Information and Documents discussing, relating to, or referencing in any way that Donna Waldo might not have had knowledge as to how bills were coded, including the identification of any witness who stated or suggested such.

(f) All Information and Documents discussing, relating to, or referencing in any way that Dr. Vaid might not have instructed anyone as to how his bills were coded, including the identification of any witness who stated or suggested such.

(g) All Information and Documents discussing, relating to, or referencing in any way that Donna Waldo might not have instructed anyone as to how bills were coded, including the identification of any witness who stated or suggested such.

(h) All Information and Documents discussing, relating to, or referencing in any way that Dr. Vaid might not have knowledge as to what National Provider Identifier his bills were submitted under, including the identification of any witness who stated or suggested such.

(i) All Information and Documents discussing, relating to, or referencing in any way that Donna Waldo might not have knowledge as to what National Provider Identifier bills were submitted under, including the identification of any witness who stated or suggested such.

(ff) All Information and Documents discussing, relating to, or referencing in any way that Dr. Vaid might not have knowledge as to the alleged prohibition of writing a prescription for controlled substances on a date different from the date the prescription is provided to the patient.

(gg) All Information and Documents discussing, relating to, or referencing in any way that Dr. Vaid might not have knowledge as to the alleged prohibition of having a nurse practitioner provide a prescription for controlled substances issued by the doctor and given to the patient under instructions from the doctor.

(hh) All Information and Documents discussing, relating to, or referencing in any way that Donna Waldo might not have knowledge as to the alleged prohibition of writing a prescription for controlled substances on a date different then the date the prescription is provided to the patient.

(ii) All Information and Documents discussing, relating to, or referencing in any way that Donna Waldo might not have knowledge as to the alleged prohibition of having a nurse practitioner provide a prescription for controlled substances issued by the doctor and given to the patient under instructions from the doctor.

In response to the above requests, the government states that coding and billing materials have been produced.  The government also objected to the "might not have" phrasing in the requests as vague.  The undersigned agrees.  Seven of the requests ask for information from the government about what the defendants might not know about billing practices.  Four of the requests ask what defendant might not know about the prohibition of having a nurse practitioner provide a prescription for controlled substances.  These requests are not seeking evidence that is both material and favorable to their defense. Pursuant to *Palmer*, the government responded that the defendants are not legally entitled to this information.  In addition, regarding requests about the prescription procedures, the government stated it has produced documents, including prescription information that were seized from defendants' offices during execution of the search warrants.  Defendants motion to compel regarding requests (d), (e), (f), (g), (h), (i), (ff), (gg), (hh) and (ii) should be denied.

    Defendants propounded several discovery requests regarding each defendant's character:

(j) All Information and Documents discussing, relating to, or referencing in any way that Dr. Vaid was a good physician.

(k) All Information and Documents discussing, relating to, or referencing in any way that Donna Waldo was a good nurse practitioner.

(v) Any statement from any individual who said anything which suggested in any way that Dr. Vaid was or is honest.

(w) Any statement from any individual who said anything which suggested in any way that Donna Waldo was or is honest.

(x) Any statement from any individual who said anything which suggested in any way that Dr. Vaid was or is good for his patients.

(y) Any statement from any individual who said anything which suggested in any way that Donna Waldo was or is good for her patients.

In response to the above requests, the government again states that it will provide witness statements pursuant to *Brady*.  It also objects stating these requests are for evidence that is not relevant or admissible under Fed.R.Evid. 608(b).  Rule 608 refers to the character of witnesses.  In this case, the defendants are seeking information about whether statements have been made about the character of the defendants, *i.e.*, whether the defendant was "good" or "honest".  This is information that the defendants may introduce at trial.  However, the government is not obligated to locate evidence that is not in its possession.  In addition, this information should not be considered materially favorable evidence that would deprive defendant of a fair trial.  Defendants motion to compel regarding requests (j), (k), (v), (w), (x) and (y) should be denied.

Defendants submitted several requests regarding steps defendants may have taken to correct billing procedures and to "protect patients from misusing prescriptions."

> (z) Any statement from any individual who said anything which suggested in any way that there was confusion within Dr. Vaid's offices as to how to utilize billing codes.
>
> (aa) Any statement from any individual who said anything which suggested in any way that Dr. Vaid tried to have the billing done correctly.
>
> (bb) Any statement from any individual who said anything which suggested in any way that Donna Waldo tried to have the billing done correctly.
>
> (cc) Any statement from any individual who said anything which suggested in any way that Dr. Vaid took steps to protect his patients from misusing prescriptions.
>
> (dd) Any statement from any individual who said anything which suggested in any way that Ms. Waldo took steps to protect patients from misusing prescriptions.

The above requests are not specific requests for specific information.  These requests use the language "any statement" from "any individual" who said "anything" "which suggested in any way"…."  The undersigned agrees that these requests are overly broad and not intended to

16

determine if there is evidence that is materially favorable for defendants.  The motion to compel regarding requests (z), (aa), (bb), (cc) and (dd) should be denied.

      Defendants submitted other requests regarding emails and other documentation.

(m) Any e-mails or other documentation, or statements of witnesses which indicated that Dr. Vaid, Donna Waldo or their alleged co-conspirators told employees to do the right thing or conduct themselves within the law, or anything to that effect relating to any topic.

(n) Any correspondence or e-mail wherein any co-conspirator states anything to the effect that the steps to be taken regarding any matter should be to follow the company's rules, do the right thing, and/or conduct themselves in a legal fashion.

      Where these requests use the language "anything to the effect", they are not specific and do not merit a specific response.  In addition, the government states that it has produced corporate documents and emails seized from defendants' offices.  Therefore, the government has complied with requests (m) and (n) and the motion to compel regarding these requests should be denied.

      Finally, defendants contend that they continue to seek specific requests to the discovery requests [Doc. 30] that were the subject of the December 4, 2018 hearing on defendants' original motion to compel [Doc. 66].  Based on the foregoing, including the legal standards articulated above, the undersigned recommends that that motion be denied as well.  Due to the voluminous nature of the requests, the undersigned ordered defendant to narrow the requests and that the government try to provide specific responses to those questions.  Defendants submitted a smaller number of requests, but for the reasons stated above, the undersigned finds that the motion to compel additional responses should be denied.

      Accordingly,

17

**IT HEREBY RECOMMENDED** that Defendant's Joint Motion to Compel the Discovery Responses the Court Instructed the Government to Provide at the December 4, 2018 Hearing [Doc. 103] should be **DENIED** as set forth above.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Compel Responses to their Discovery Requests [Doc. 66] should be **DENIED** as set forth above.

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Failure to timely file objections may result in a waiver of the right to appeal questions of fact.

Dated this 24th day of April, 2019.


  /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE